UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAJUAN M. MURRAY,

      Petitioner,                    Civil No. 2:10-CV-11278
                                       HONORABLE VICTORIA A. ROBERTS
v.                               UNITED STATES DISTRICT JUDGE

CINDI CURTIN,

      Respondent,
_____/

**OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS
CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY**

      Dajuan M. Murray, ("Petitioner"), confined at the Ionia Correctional Facility in

Ionia, Michigan, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C.§

2254.  In his habeas petition, filed by attorney Alyson Oliver, Petitioner challenges his

conviction for three counts of armed robbery, M.C.L.A. 750.529; one count of fleeing and

eluding a police officer, M.C.L.A. 257.602a(2); and being a fourth felony habitual

offender, M.C.L.A. 769.12.  For the reasons that follow, the petition for writ of habeas

corpus is DENIED.

## I.  Background

      Petitioner was convicted of the above offenses following a jury trial in the Oakland

County Circuit Court.  This Court recites verbatim the relevant facts relied upon by the

Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28

U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

1

Defendant's convictions arise out of the armed robbery of a Cingular Wireless store in Oak Park.  A man later identified as defendant entered the store covering his mouth and nose with a black rag, wearing surgical-type gloves, and carrying a gun.  The storeowner complied with defendant's demands for cellular telephones, money from the cash register, and a laptop computer.  Shortly after the robbery, the police arrived and attempted to pull over a vehicle that was leaving an alley behind the store.  The driver of the vehicle refused, and the police pursued the vehicle, which was a rental car that defendant had previously rented and reported as stolen.  During the pursuit, the vehicles reached speeds in excess of 80 miles an hour, and defendant ultimately eluded the police.  One of the store employees identified defendant as the perpetrator at a photographic lineup the following day.

*People v. Murray,* No. 270983, * 1 (Mich.Ct.App. June 24, 2008).

Petitioner's conviction was affirmed on appeal. *Id;, lv. den.* 482 Mich. 1186, 758 N.W.2d 563 (2008).

Petitioner seeks a writ of habeas corpus on the following grounds: (i) the prosecution improperly used a peremptory challenge to excuse an African-American woman from the jury; (ii) Petitioner was denied the effective assistance of counsel when his attorney failed to object to the receipt of the pre-sentence report minutes before sentencing; (iii) the trial court erroneously scored Petitioner's sentencing guidelines; (iv) the trial court committed error by scoring offense variables of the sentencing guidelines based on facts that had not been found by the jury or admitted to by Petitioner; and (v) trial counsel was ineffective for failing to object to the sentencing violations. [1]

## II.  Standard of Review

---

[1] Petitioner originally sought habeas relief on six grounds, including a claim that trial counsel was ineffective for failing to argue that Petitioner's right to a speedy trial had been violated.  Petitioner moved to delete this claim from his petition, to avoid dismissal of his entire habeas petition, which this Court granted.

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death

Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas

cases:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to
> any claim that was adjudicated on the merits in State court proceedings
> unless the adjudication of the claim–
>
>> (1)     resulted in a decision that was contrary to, or
>> involved an unreasonable application of, clearly established
>> Federal law, as determined by the Supreme Court of the
>> United States; or
>> (2)     resulted in a decision that was based on an
>> unreasonable determination of the facts in light of the
>> evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the

state court arrives at a conclusion opposite to that reached by the Supreme Court on a

question of law or if the state court decides a case differently than the Supreme Court has

on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06

(2000).  An "unreasonable application" occurs when "a state court decision unreasonably

applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.  A

federal habeas court may not "issue the writ simply because that court concludes in its

independent judgment that the relevant state-court decision applied clearly established

federal law erroneously or incorrectly." *Id.* at 410-11.

The Supreme Court has explained that "[A] federal court's collateral review of a

state-court decision must be consistent with the respect due state courts in our federal

3

system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,'and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 130 S. Ct. 1855, 1862 (2010)((quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (*per curiam*)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003). Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.*

"[I]f this standard is difficult to meet, that is because it was meant to be." *Harrington,* 131 S. Ct. at 786. Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents.

4

*Id.* Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (citing *Jackson v. Virginia,* 443 U.S. 307, 332, n. 5 (1979))(Stevens, J., concurring in judgment)).  Thus, a "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law." *Woodford,* 537 U.S. at 24.  Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington,* 131 S. Ct. at 786-87.  Finally, in reviewing Petitioner's claims, this Court must remember that under the federal constitution, Petitioner was "entitled to a fair trial but not a perfect one." *Lutwak v. United States,* 344 U.S. 604, 619 (1953).

### III.  Discussion

#### A.  Claim # 1.  The racially motivated peremptory challenge claim.

Petitioner first claims that he is entitled to habeas relief because the prosecutor improperly exercised a peremptory challenge to excuse an African-American woman from his jury panel.  As a related claim, Petitioner contends that trial counsel was ineffective for not objecting to the peremptory challenge at the time that it was made.

Respondent contends that the claim is procedurally defaulted because Petitioner failed to make a timely objection at trial and the Michigan Court of Appeals relied on the failure to object to deny the claim.  Petitioner claims that his trial counsel was ineffective

for failing to make a timely objection to the peremptory challenge.

Ineffective assistance of counsel may establish cause for procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000).  Given that the cause and prejudice inquiry for the procedural default issue merges with an analysis of the merits of Petitioner's defaulted claim, it would be easier to consider the merits of this claim. *See Cameron v. Birkett,* 348 F. Supp. 2d 825, 836 (E.D. Mich. 2004).

During jury *voir dire*, the prosecutor asked every prospective juror about their occupation, their marital status and, if married, their spouse's occupation. (Tr. 3/27/06, pp. 54, 67-69, 71-72, 75-76, 110, 130, 137-138, 150-152, 155-156, 171-172, 185, 187-188, 191).  The prosecutor used two of his twelve peremptory challenges to excuse a pastor and a social worker. (*Id.,* pp. 54, 58, 70-72, 82-83, 107, 121).

Petitioner's attorney exercised eleven of his twelve peremptory challenges during this portion of the *voir dire*. (*Id.,* pp. 112, 127, 134, 139, 146, 153, 158, 163, 168, 174, 179).  During this time period, the prosecutor passed on the jury panel eight times. (*Id.,* pp. 134, 146, 153, 158, 163, 168, 174, 179).

At this point, Juror No. 401, Ms. Kelly Sims was called. (Tr. 3/27/06, p. 179; Tr. 3/28/06, p. 5).  After the trial judge asked Ms. Sims some questions, the following exchange occurred between the assistant prosecutor and Ms. Sims:

> MR. DAVIS [The assistant prosecuting attorney]: Ms. Sims, are you currently employed now?
>
> JUROR NO. 401: Yes.

MR. DAVIS: Where are you employed?

JUROR NO. 401: The postal service.

MR. DAVIS: United States Postal Service?

JUROR NO. 401: Yes.

MR. DAVIS: Which post office?

JUROR NO. 401: Seven Mile and Southfield.

MR. DAVIS: Are you currently married?

JUROR NO. 401: No.

MR. DAVIS: Did you fill out a jury questionnaire by chance?

JUROR NO. 401: Yes, I did.

MR. DAVIS: Okay. And have you yourself had any bad experience with law enforcement?

JUROR NO. 401: None.

MR. DAVIS: Have you ever gotten a speeding ticket?

JUROR NO. 401: Yes.

MR. DAVIS: Do you feel as though you were treated fairly by the officer that was involved?

JUROR NO. 401: Yes.

MR. DAVIS: Any bad experiences as a youth with police or anything of that nature?

JUROR NO. 401: (Inaudible).

MR. DAVIS: Can you be fair and impartial to both sides?

7

JUROR NO. 401: Yes.

MR. DAVIS: All right. Have you ever been to the Cingular Wireless store on Ten Mile and Coolidge?

JUROR NO. 401: No.

MR. DAVIS: And what city do you live in?

JUROR NO. 401: Southfield.

MR. DAVIS: Okay. You heard of direct evidence and circumstantial evidence?

JUROR NO. 401: (Inaudible).

MR. DAVIS: Will you consider both of those?

JUROR NO. 401: Yes.

MR. DAVIS: Okay. And you heard the burden of proof in this case, proof beyond a reasonable doubt?

JUROR NO. 401: Yes.

MR. DAVIS: Will you hold me to that standard and not a higher one?

JUROR NO. 401: Yes.

(*Id.,* pp. 182-183).

After Petitioner's attorney counsel asked an additional question, the prosecutor peremptorily excused Ms. Sims without objection. (*Id.,* p. 184).

Petitioner's attorney then exercised his 12th and final peremptory challenge before both parties accepted the panel. (*Id.,* pp. 189, 193).

On the following day of trial, Petitioner's attorney objected to the prosecutor using

8

a peremptory challenge to remove Ms. Sims.  Petitioner's attorney noted that it was the first time in twenty three years of practicing law that he had an all-white jury. (Tr. 3/28/06, pp. 5-7).

In response, the prosecutor argued that Petitioner had not timely objected or established an inference of purposeful discrimination by the prosecutor's peremptory challenge. (*Id.,* pp. 8-9).

Given the prosecutor's use of two peremptory challenges and his failure to exercise another challenge until Ms. Sims was called, the trial judge "reluctantly agree[d]" that Petitioner had made a prima facie showing that a peremptory challenge had been made on the basis of race.  The judge asked the prosecutor to explain his decision to exercise a peremptory challenge on Ms. Sims. (*Id.,* p. 10).

The prosecutor first indicated that he had no jury questionnaire from Sims and without one, he could not determine whether Ms. Sims had a criminal history or confirm any of her answers about her background.  The prosecutor then contended that Ms. Sims answered *voir dire* questions very quickly and he "did not get a good feeling" about her responses.  Lastly, Ms. Sims worked for the post office and the prosecutor opined that "people from the Postal Service can sometimes be squirrelly." (*Id.,* pp. 10-12).

The trial judge ruled that the prosecutor gave "three reasonable reasons" for using a peremptory challenge to excuse Ms. Sims from jury service.  The judge agreed that the prosecutor could not know Sims' criminal history or verify the accuracy of her responses without a juror questionnaire.  The judge further indicated that although he was "puzzled

9

by the post office stereotype," he noted that attorneys often struck potential jurors because of their professions, including doctors, engineers, lawyers and secretaries.  The judge lastly indicated his unwillingness to second guess the prosecutor's judgment that Sims' "answers were not genuine" given their "speed." (*Id.,* pp. 13-14).

In reviewing Petitioner's claim on appeal, the Michigan Court of Appeals agreed with the trial court judge that Petitioner had made out a prima facie case of discrimination based on race. *Murray,* Slip. Op. at * 2.  The Michigan Court of Appeals, however, ruled that the prosecutor had offered valid, race-neutral reasons for excusing Ms. Sims and that Petitioner had failed to show that these reasons were a mere pretext for discrimination. *Id.,* pp. 2-3.

The Equal Protection Clause of the Fourteenth Amendment prohibits a prosecutor from challenging potential jurors solely on account of their race. *Batson v. Kentucky,* 476 U.S. 79, 89 (1986).  A criminal defendant may establish a prima facie case of purposeful discrimination in the selection of a petit jury solely on evidence concerning the prosecutor's exercise of peremptory challenges at the defendant's trial. *Id.* at 96.  To establish such a case, a defendant must show that he is a member of a cognizable racial group and that the prosecutor has used peremptory challenges to remove members of the defendant's race from the jury venire.  The defendant must also show that these facts and any other relevant circumstances raise an inference that the prosecutor used the peremptory challenges to exclude jurors from the petit jury on account of their race. These relevant circumstances include the pattern of strikes and the prosecutor's

10

2:10-cv-11278-VAR-RSW   Doc # 19   Filed 11/15/12   Pg 11 of 23   Pg ID 1780

questions and statements. *Batson,* 476 U.S. at 96-97.  Once the defendant makes a prima facie showing, the burden then shifts to the prosecutor to offer a "race neutral explanation" for challenging the jurors. *Id.* at 97.  The prosecutor's explanation does not have to rise to the level which would justify the exercise of a challenge for cause, but a prosecutor may not rebut a defendant's prima facie case of discrimination by simply stating that he challenged jurors of the defendant's race on the assumption that they would be partial to the defendant because they were members of the same racial group. *Id.*  The trial court must then determine whether the defendant carried his burden of proving purposeful discrimination. *Id.,* at 98.

A "race neutral" explanation in the context of a *Batson* claim means "an explanation based on something else than the race of juror.  At this step of the inquiry, the issue is the facial validity of the prosecutor's explanation.  Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral." *Hernandez v. New York,* 500 U.S. 352, 360 (1991).  A race neutral explanation that is offered by the prosecution need not be persuasive or plausible; instead, the persuasiveness or the justification becomes relevant only when the trial court determines whether the opponent of the challenge has carried his burden of proving purposeful discrimination. *Purkett v. Elem,* 514 U.S. 765, 767-69 (1995).

On habeas review of a state conviction, a *Batson* claim involves "a mixed question of law and fact and 'necessarily focuses on the reasonableness of the decisions of the state courts-that is, whether those decisions constituted an unreasonable

11

application of Supreme Court precedent.'" *Braxton v. Gansheimer,* 561 F. 3d 453, 458

(6th Cir. 2009)(quoting *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003))(additional

citation omitted).  However, the question of whether a prosecutor intended to

discriminate on the basis of race in challenging a potential juror is a question of

historical fact. *Lancaster*, 324 F. 3d at 429.  "Under [the] AEDPA, primary or historical

facts found by state courts are presumed correct and are rebuttable only by clear and

convincing evidence." *Id.* at 429 (citations and internal quotation marks omitted).

Therefore, "while a district court's ruling on a *Batson* claim presented on direct appeal is

entitled to great deference and should not be disturbed unless it is clearly erroneous, 'the

standard must be modified in the context of a § 2254 petition to give credence to §

2254(e)(1)'s requirement that facts found by a state court be presumed correct unless the

petitioner rebuts this presumption by clear and convincing evidence.'" *Braxton,* 561 F.

3d at 458 (quoting *Lancaster,* 324 F. 3d at 429, n. 1).

     The third step of the *Batson* inquiry requires the party who challenges the

peremptory challenge to "demonstrate that the purported explanation is merely a pretext

for a racial motivation." *McCurdy v. Montgomery County*, 240 F. 3d 512, 521 (6th Cir.

2001).  "Because the primary defense to pretext based violations of *Batson* is the [trial]

court's ability to assess the credibility of an attorney's representations, it is critical that

the [trial] court independently assess the proffered justifications." *Id*. (citing *Hernandez*,

500 U.S. at 365).  "In the typical peremptory challenge inquiry, the decisive question

will be whether counsel's race-neutral explanation for a peremptory challenge should be

believed." *Miller–El v. Cockrell*, 537 U.S. 322, 339 (2003)(quoting *Hernandez,* 500 U.S. at 365).  Then "the trial court must determine whether the defendant has carried his burden of proving purposeful discrimination." *Hernandez*, 500 U.S. at 359.  "[A] state court's finding of the absence of discriminatory intent is a 'pure issue of fact' accorded significant deference." *Miller–El v. Cockrell*, 537 U.S. at 339.

In the present case, the Michigan Court of Appeals reasonably determined that the prosecutor had given valid race neutral reasons for peremptorily challenging Ms. Sims and that Petitioner had failed to establish that these reasons were a pretext for racial discrimination.  The prosecutor first indicated that he excused Ms. Sims because he did not have a copy of her juror questionnaire.  A juror's failure to fill out or complete a jury questionnaire is a valid race neutral reason to excuse that juror. *See Wade v. Cain,* 372 Fed. Appx. 549, 554 (5ᵗʰ Cir. 2010).  Petitioner has failed to identify any Caucasian jurors who were allowed to sit on the jury who had failed to complete their juror questionnaires.  Thus, the state courts' determination that this was a valid race-neutral reason for excusing Ms. Sims from the jury was reasonable. *Id.*

The prosecutor also indicated that he excused Ms. Sims because she had answered his questions too quickly and he did not get a "good feeling" when she answered his questions.  "[B]ody language and demeanor are permissible race-neutral justifications" to exercise a peremptory challenge. *McCurdy*, 240 F.3d at 521; *see also United States v. Forrest*, 402 F.3d 678, 687 (6ᵗʰ Cir. 2005) (holding that the prosecution's articulated reason for exercising a peremptory challenge-the juror's "extreme negative reaction" to

13

being called for jury duty-was a permissible race-neutral justification in the absence of proof that this reason was pretextual).  Indeed, "[t]he fact that a prosecutor's reasons may be founded on nothing more than a trial lawyer's instincts about a prospective juror does not diminish the scope of acceptable invocation of peremptory challenges, so long as they are the actual reasons for the prosecutor's actions." *Braxton v. Gansheimer*, 561 F. 3d at 459(quoting *United States v. Power*, 881 F. 2d 733, 740 (9th Cir. 1989)).

The prosecutor lastly peremptorily challenged Ms. Sims because she worked for the post office and he believed that postal workers can sometimes be "squirrelly." "Occupation is a permissible reason to defend against a *Batson* challenge[.]" *Hall v. Luebbers*, 341 F. 3d 706, 713 (8th Cir. 2003).  The prosecutor's decision to peremptorily challenge Ms. Sims because she worked for the post office is a valid race-neutral reason that would defeat Petitioner's *Batson* challenge. *See Williams v. Groose,* 77 F. 3d 259, 261 (8th Cir. 1996).

Finally, the state trial judge credited the prosecutor's credibility in determining that the reasons offered by the prosecutor for excusing Ms. Sims were race-neutral and not motivated by a discriminatory intent.  "[A] state court's finding of the absence of discriminatory intent is a 'pure issue of fact' accorded significant deference." *Miller–El v. Cockrell*, 537 U.S. at 339.  Although "reasonable minds" who reviewed the record might disagree about the prosecutor's credibility concerning his proffered reasons for excusing Ms. Sims, "on habeas review that does not suffice to supersede the trial court's credibility determination." *Rice v. Collins*, 546 U.S. 333, 341-42 (2006).  Because the

14

state trial judge's decision to credit the prosecutor's race-neutral explanation for

peremptorily striking Ms. Sims in response to Petitioner's *Batson* challenge was not an

unreasonable determination of the facts in light of evidence presented in state court,

Petitioner is not entitled to habeas relief on his *Batson* claim. *Id.*

The Court will likewise reject Petitioner's related ineffective assistance of counsel

claim.

To show that he was denied the effective assistance of counsel under federal

constitutional standards, a defendant must satisfy a two prong test.  First, the defendant

must demonstrate that, considering all of the circumstances, counsel's performance was

so deficient that the attorney was not functioning as the "counsel" guaranteed by the

Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  In so doing, the

defendant must overcome a strong presumption that counsel's behavior lies within the

wide range of reasonable professional assistance. *Id*. In other words, the defendant must

overcome the presumption that, under the circumstances, the challenged action might be

sound trial strategy. *Strickland,* 466 U.S. at 689.  Second, the defendant must show that

such performance prejudiced his defense. *Id*.  To demonstrate prejudice, the defendant

must show that "there is a reasonable probability that, but for counsel's unprofessional

errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at

694.  "*Strickland*'s test for prejudice is a demanding one. 'The likelihood of a different

result must be substantial, not just conceivable.'" *Storey v. Vasbinder*, 657 F.3d 372, 379

(6th Cir. 2011)(quoting *Harrington*, 131 S. Ct. at 792).  The Supreme Court's holding in

15

*Strickland* places the burden on the defendant who raises a claim of ineffective assistance of counsel, and not the state, to show a reasonable probability that the result of the proceeding would have been different, but for counsel's allegedly deficient performance. *See Wong v. Belmontes*, 130 S. Ct. 383, 390-91 (2009).

In light of the fact that Petitioner has failed to show that he has a meritorious *Batson* claim, he has failed to show that he was denied the effective assistance of trial counsel as a result of trial counsel's failure to make a *Batson* challenge at the time that Ms. Sims was removed from the jury. *See Mitchell v. Rees,* 36 Fed. Appx. 752, 753-54 (6th Cir. 2002).  Petitioner is not entitled to habeas relief on his first claim.

**B.  Claims # 2, 3, 4, and 5.  The sentencing claims.**

The Court will consolidate Petitioner's sentencing claims and his related ineffective assistance of counsel claims for judicial clarity.

This Court initially notes that Petitioner's sentence of fifty to seventy five years in prison for the armed robbery conviction as a fourth felony habitual offender and the sentence of one to fifteen years in prison for the fleeing and eluding conviction as a fourth felony habitual offender were within the statutory limits for those offenses.  A sentence imposed within the statutory limits is not generally subject to habeas review. *Townsend v. Burke*, 334 U.S. 736, 741 (1948); *Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999).  A sentence within the statutory maximum set by statute does not normally constitute cruel and unusual punishment. *Austin v. Jackson*, 213 F. 3d 298, 302 (6th Cir. 2000); *See also Foster v. Withrow,* 159 F. Supp. 2d 629, 645 (E.D. Mich. 2001).

16

Claims which arise out of a state trial court's sentencing decision are not normally cognizable on federal habeas review, unless the habeas petitioner can show that the sentence imposed exceeded the statutory limits or is wholly unauthorized by law. *See Vliet v. Renico,* 193 F. Supp. 2d 1010, 1014 (E.D. Mich. 2002).

Taking Petitioner's third claim first, Petitioner contends that the trial court incorrectly scored Offense Variables 13 and 17 of the Michigan Sentencing Guidelines.

It is "not the province of a federal habeas court to reexamine state-court determinations on state-court questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). A federal court is limited in federal habeas review to deciding whether a state court conviction violates the Constitution, laws, or treaties of the United States. *Id.* Thus, errors in the application of state law are usually not questioned by a federal habeas court.

Petitioner's claim that the state trial court incorrectly scored or calculated his sentencing guidelines range under the Michigan Sentencing Guidelines is not a cognizable claim for federal habeas review, because it is basically a state law claim. *See Tironi v. Birkett*, 252 Fed. Appx. 724, 725 (6th Cir. 2007); *Howard v. White,* 76 Fed. Appx. 52, 53 (6th Cir. 2003); *See also Haskell v. Berghuis,* 695 F. Supp. 2d 574, 598 (E.D. Mich. 2010)*;Coy v. Renico,* 414 F. Supp. 2d 744, 780 (E.D. Mich. 2006). "Petitioner has no state-created interest in having the Michigan Sentencing Guidelines applied rigidly in determining his sentence." *See Mitchell v. Vasbinder,* 644 F. Supp. 2d 846, 867 (E.D. Mich. 2009)(citing *Shanks v. Wolfenbarger,* 387 F. Supp. 2d 740, 752 (E.D. Mich. 2005)). "[I]n short, petitioner had no federal constitutional right to be

17

sentenced within Michigan's guideline minimum sentence recommendations." *Doyle v. Scutt*, 347 F. Supp. 2d 474, 485 (E.D. Mich. 2004). Any error by the trial court in calculating his guideline score or in departing above his sentencing guidelines range alone would not merit habeas relief. *Id.* Petitioner is not entitled to habeas relief on his third claim.

In his related fourth claim, that the trial court judge violated his Sixth Amendment right to a trial by jury by using factors that had not been submitted to a jury and proven beyond a reasonable doubt when scoring his sentencing guidelines.

In *Blakely v. Washington*, 542 U.S. 296 (2004), the U.S. Supreme Court held that other than the fact of a defendant's prior conviction, any fact that increases or enhances a penalty for a crime beyond the prescribed statutory maximum for the offense must be submitted to the jury and proven beyond a reasonable doubt. *Id.* at 301 (citing *Apprendi v. N.J.*, 530 U.S. 466, 490 (2000)).

Petitioner is not entitled to habeas relief on his claim. *Blakely* involved a trial court's departure from Washington's determinate sentencing scheme. Michigan, by contrast, has an indeterminate sentencing system in which the defendant is given a sentence within a minimum and maximum sentence. *See People v. Claypool*, 470 Mich. 715, 730, n. 14, 684 N.W.2d 278 (2004); *People v. Drohan*, 475 Mich. 140, 160-61, 715 N.W.2d 778 (2006)(both citing M.C.L.A. 769.8). "[M]ichigan's sentencing guidelines, unlike the Washington guidelines at issue in *Blakely*, create a range within which the trial court must set a minimum sentence." *Drohan*, 475 Mich. at 161. Under Michigan

18

law, only the minimum sentence must presumptively be set within the appropriate

sentencing guidelines range. *See People v. Babcock*, 469 Mich. 247, 255, n. 7, 666

N.W.2d 231 (2003) (citing M.C.L.A. 769.34(2)).  Under Michigan law, the trial judge

sets the minimum sentence, but can never exceed the maximum sentence. *Claypool*, 470

Mich. at 730.  Therefore, Michigan's indeterminate sentencing scheme is unaffected by

the U.S. Supreme Court's holding in *Blakely*.  *Drohan*, 475 Mich. at 164.

       The holding in *Blakely* is inapplicable to Petitioner's sentence.  Indeterminate

sentencing schemes, unlike determinate sentencing schemes, do not infringe on the

province of the jury.  *Blakely*, 542 U.S. at 304-05, 308-09.  The holdings in *Apprendi*

and *Blakely* do not apply to a judge's factfinding that increases a minimum sentence so

long as the sentence does not exceed the applicable statutory maximum. *See Chontos v.

Berghuis*, 585 F.3d 1000, 1002 (6th Cir. 2009); *See also Montes v. Trombley,* 599 F.3d

490, 495 (6th Cir. 2010)(the *Blakely-Apprendi* rule requiring any fact that increases the

penalty for a crime beyond the prescribed statutory maximum to be submitted to a jury

and proved beyond a reasonable doubt does not apply to laws that set the maximum

sentence by statute but that permit a judge to determine the minimum sentence through

judicial factfinding, and does not preclude a judge from utilizing the

preponderance-of-the-evidence standard when finding facts related to sentencing).  As

noted by the Sixth Circuit, "[T]he Sixth Amendment gives a criminal defendant the right

to have a jury find any fact that increases the *maximum* sentence the defendant faces, not

any fact that increases the *minimum* sentence." *Arias v. Hudson*, 589 F.3d 315, 317 (6[th]

19

Cir. 2009)(citing *McMillan v. Pennsylvania*, 477 U.S. 79 (1986))(emphasis original).

Because Michigan's sentencing laws create an indeterminate-sentencing scheme, it does

not violate Petitioner's due-process rights or his right to a jury trial. *Montes,* 599 F. 3d at

497.  Petitioner is not entitled to habeas relief on any *Blakely* claim. *Id.*

        In his second and fifth claims, Petitioner contends that he was denied the effective

assistance of counsel at sentencing.

        Although the Supreme Court has never expressly extended *Strickland* to

noncapital sentencing cases, the Sixth Circuit has applied it in that context with regards

to reviewing federal convictions on direct appeal. *See United States v. Stevens*, 851 F. 2d

140, 145 (6th Cir. 1988).  However, the AEDPA standard of review found in 28 U.S.C. §

2254 (d)(1) prohibits the use of lower court decisions in determining whether the state

court decision is contrary to, or an unreasonable application of, clearly established

federal law. *Miller v. Straub,* 299 F. 3d 570, 578-579 (6th Cir. 2002).  The Ninth Circuit

has noted, "[W]hen the Supreme Court established the test for ineffective assistance of

counsel claims in *Strickland*, the [Supreme] Court expressly declined to 'consider the

role of counsel in an ordinary sentencing, which ... may require a different approach to

the definition of constitutionally effective assistance.'" *Cooper-Smith v. Palmateer*, 397

F. 3d 1236, 1244 & n. 39 (9th Cir. 2005)(quoting *Strickland,* 466 U.S. at 686).  Because

the Supreme Court has not decided what standard should apply to ineffective assistance

of counsel claims in the noncapital sentencing context, there is no clearly established

federal law regarding ineffective assistance of counsel claims in noncapital sentencing

20

cases, so as to provide Petitioner with a basis for habeas relief on his claim. *Id., See also Davis v. Grigas,* 443 F. 3d 1155, 1158 (9ᵗʰ Cir. 2006).

Assuming that *Strickland* applies to non-capital sentencing proceedings, Petitioner would be unable to establish that he is entitled to relief on his claim that trial counsel was ineffective at sentencing.

In his second claim, Petitioner alleges that counsel was ineffective for failing to object to the fact that Petitioner only received his pre-sentence report moments before sentencing.  Any error by a defense counsel in failing to read and review a pre-sentence investigation report with a defendant prior to sentencing does not constitute ineffective assistance of counsel in the absence of any indication that the outcome of the sentencing would have been different. *See United States v. Bartholomew,* 974 F. 2d 39, 42 (5ᵗʰ Cir. 1992). *See also Siebert v. Jackson*, 205 F. Supp. 2d 727, 734-35 (E.D. Mich. 2002). Petitioner does not offer any argument how his sentencing would have been different had counsel spent more time reviewing his pre-sentence report with him, therefore, he is not entitled to habeas relief on this claim.

In his fifth claim, Petitioner alleges that trial counsel was also ineffective for failing to object to the scoring of the sentencing guidelines and to the *Blakely* violation.

On Petitioner's direct appeal, the Michigan Court of Appeals ruled that Offense Variables 13 and 17 had been correctly scored under Michigan law, hence, trial counsel was not ineffective for failing to raise objections to the sentencing guidelines. *Murray,* Slip. Op. at * 4-5.  Because the Michigan Court of Appeals concluded that there was a

factual basis for the scoring of the various offense variables under Michigan's Sentencing Guidelines, Petitioner is unable to show that he was prejudiced by his counsel's purported ineffectiveness in failing to object to the scoring of his sentencing guidelines. *See Coleman v. Curtin*, 425 Fed. Appx. 483, 485 (6th Cir. 2011)*; cert. den.* 132 S. Ct. 848 (2011).  Because an objection to the scoring of the sentencing guidelines would have been futile, counsel was not ineffective for failing to object to the scoring of the offense variables. *See Harris v. U.S.,* 204 F. 3d 681, 683 (6th Cir. 2000). Furthermore, because the holding in *Blakely* is inapplicable to Michigan's indeterminate sentencing scheme, trial counsel was not ineffective for failing to object to the scoring of the sentencing guidelines on this basis. *See Rupert v. Berghuis*, 619 F. Supp. 2d 363, 371 (W.D. Mich. 2008).  Petitioner is not entitled to habeas relief on his second, third, fourth, and fifth claims.

## IV.  Conclusion

The Court will deny the petition for writ of habeas corpus.  The Court will also deny a certificate of appealability to Petitioner.  In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2).  To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).  When a district court rejects a habeas petitioner's constitutional claims

on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254; *See also Strayhorn v. Booker,* 718 F. Supp. 2d 846, 875 (E.D. Mich. 2010).

For the reasons stated in this opinion, the Court will deny Petitioner a certificate of appealability because he has failed to make a substantial showing of the denial of a federal constitutional right. *See Siebert,* 205 F. Supp. 2d at 735.

## V.  ORDER

**IT IS ORDERED** that the Petition for Writ of Habeas Corpus is **DENIED.**

**IT IS FURTHER ORDERED** That a Certificate of Appealability is **DENIED.**

s/Victoria A. Roberts
**Victoria A. Roberts**
**United States District Judge**

**Dated:  November 15, 2012**

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on November 15, 2012.

s/Carol A. Pinegar
Deputy Clerk

23